UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL WILLIAMSON, MELODY | : | CIVIL ACTION NO. |
| WILLIAMSON, HANNAH WILLIAMSON, | : | 3:13-CV-00578 (VLB) |
| GORDON WILLIAMSON, BARBARA | : | |
| WILLIAMSON, and DANE WILLIAMSON, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PSYCHIATRIC SECURITY REVIEW BOARD, | : | |
|     Defendant. | : | August 13, 2014 |

## MEMORANDUM OF DECISION DENYING AS FUTILE LEAVE TO AMEND COMPLAINT

**I.**      **Introduction**

Plaintiffs Daniel, Melody, Hannah, Gordon, Barbara, and Dane Williamson bring this action against the Defendant Psychiatric Security Review Board ("PSRB" or "Board"), for alleged violations of their Fifth and Fourteenth Amendment rights to Procedural Due Process and Equal Protection. The Court previously granted the Defendant's motion to dismiss this action pursuant to the State of Connecticut's Eleventh Amendment sovereign immunity but did not, in that opinion, address the Defendant's additional arguments pursuant to Federal Rule of Civil Procedure 12(b)(6) or address the Plaintiffs' inability to amend their complaint due to futility. The Court articulates here why Plaintiffs' other arguments are unavailing and the reasons why amending the Complaint would be futile. Briefly, amendment to name the correct defendant will not cure the Plaintiffs' inability to prevail on their Procedural Due Process and Equal

1

Protection claims; the Plaintiffs cannot address the legal deficiencies in their claims by alleging additional facts sufficient to support them. In other words, even if this Court had jurisdiction over the Plaintiffs' claims, which it may have in the event that Plaintiffs were allowed to amend their operative complaint to name the correct defendant, the Court would grant dismissal of Plaintiffs' claims pursuant to Rule 12(b)(6) and would deny Plaintiffs' Motions for Declaratory Judgment and Preliminary Injunction. Further amendment of the complaint would likewise be futile because the Plaintiffs cannot address the deficiencies in their due process and equal protection claims such that their claims could remain viable.

## II.  Factual Background

### a.  Connecticut's Insanity Defense and the PSRB Generally

The PSRB is an autonomous body within the Department of Mental Health and Addiction Services which consists of six members: a psychiatrist experienced with the criminal justice system, a psychologist experienced with the criminal justice system, a person with substantial experience in the process of probation, an attorney barred in Connecticut, a member of the public with substantial experience in victim advocacy, and a member of the general public. Conn. Gen. Stat. § 17a-581(a), (b). Connecticut statute allows a criminal defendant to assert as an affirmative defense that he "lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law." Conn. Gen. Stat. § 53a-13(a). If a defendant is found not guilty by

**2**

reason of mental disease or defect, after a hearing in which the court must make a finding as to the mental condition of the acquittee, and considering as its primary concern the protection of society, the court may order that the acquittee be committed to the jurisdiction of the PSRB for a term not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense for which he was tried.  Conn. Gen. Stat. § 17a-582(e)(1).

The PSRB must conduct an initial hearing to review the acquittee's status within ninety days of his commitment by the court and must conduct a review hearing at least once every two years thereafter.  Conn. Gen. Stat. §§ 17a-583(a), 17a-585.  At any hearing conducted by the PSRB during which discharge, conditional release, or confinement of the acquittee is considered the PSRB must make a finding as to the mental condition of the acquittee and, "considering that its primary concern is the protection of society," must either (1) recommend the acquittee's discharge to the court; (2) order the acquittee conditionally released subject to such conditions as are necessary to prevent the acquittee from constituting a danger to himself or others; or (3) order the acquittee confined (or to continue to be confined) in a hospital for psychiatric disabilities or placed with the Commissioner of Developmental Services for custody, care and treatment.  Conn. Gen. Stat. § 17a-584.  PSRB hearings are open to the public and the acquittee bears the "burden of proving by a preponderance of the evidence the existence of conditions warranting a less restrictive order" than the order then-currently in place.  Conn. Gen. Stat. § 17a-596(d), (f).

The PSRB may permit an acquittee confined to a psychiatric hospital to take temporarily leave of the hospital premises, subject to conditions and supervision as set by the PSRB, if it concludes that the acquittee's temporary leave, under the specified conditions, would not constitute a danger to himself or others.  Conn. Gen. Stat. § 17a-587(a).  The PSRB may also, after a hearing, grant an acquittee conditional release for supervision and treatment on an outpatient basis, subject to conditions set by the Board.  Conn. Gen. Stat. §§ 17a-588(a), 589, 580(3).  The Board may, after a hearing, modify an acquittee's conditions of conditional release.  Conn. Gen. Stat. § 17a-591(a).  An acquittee eligible for conditional release is one whose "final discharge would constitute a danger to himself or others but who can be adequately controlled with available supervision and treatment on conditional release."  Conn. Gen. Stat. § 17a-580(9).  "Danger to self or others" is defined as "the risk of imminent physical injury to others or self, and also includes the risk of loss or destruction of the property of others."  Regs. Conn. State Agencies § 17a-581-2(6).

An acquittee remains under the jurisdiction of the PSRB during any term of commitment and until discharged by the court.  Conn. Gen. Stat. § 17a-582(h).  The committing court must hold a hearing on any acquittee request or PSRB recommendation to the court for discharge, and the acquittee bears the burden of proving by a preponderance of the evidence that he or she does not have psychiatric disabilities to the extent that discharge would constitute a danger to him or herself or others.  Conn. Gen. Stat. §§ 17a-593(f), (g), 580(11).  If an acquittee remains a person with psychiatric disabilities to the extent that his

discharge at the end of his maximum term of commitment would pose a danger to himself or others, the committing court may issue an order of continued commitment.  Conn. Gen. Stat. § 17a-593(c).

> b.  Facts of this Case

On January 2, 1998, David Messenger killed his pregnant wife, Heather Williamson Messenger, in their Chaplin, Connecticut home in front of the couple's then five-year-old son, Dane.  [Dkt. 21, Am. Compl. ¶1].  On November 21, 2001, David Messenger was adjudicated not guilty by reason of mental defect or disease and remanded to the State of Connecticut for treatment.  [*Id.* at ¶8].

Dan Williamson and his wife Melody, Heather Williamson Messenger's brother and sister-in-law, raised Dane, who now goes by Dane Williamson.  [*Id.* at ¶2].  Dane has suffered severe emotional trauma resulting from the above events. [*Id.* at ¶11].  Barbara Williamson is Heather's mother, and Hannah and Gordon Williamson are her siblings.  [*Id.* at ¶¶3-5].  None of the plaintiffs reside in Connecticut.  They assert that if David Messenger is released into the community, "it will cause anxiety, stress, and emotional distress to Plaintiffs, especially for Plaintiff Dane Williamson."  [*Id.* at ¶16].

The Plaintiffs have brought this action for alleged violations of their rights during various Psychiatric Security Review Board hearings for the consideration of David Messenger's conditional release.  [*Id.* at ¶12].  Specifically, they allege that at a hearing on May 1, 2009 they appeared through counsel, John Klar, who attempted but was not allowed to make certain observations about the

evidentiary record.[1]  [*Id.* at ¶13].  Moments before the commencement of a November 18, 2011 hearing, counsel John Klar was required by PSRB Director Ellen LaChance to demonstrate that he had the authority to represent Dane Williamson, which the Plaintiffs claim constitutes "an intrusion into the attorney-client relationship," and the PSRB also indicated that Klar could not speak on behalf of victims who had already submitted a written statement.  [*Id.* at ¶14]. Finally, at a May 3, 2013 hearing, the plaintiffs allege that "Dane Williamson was permitted by the PSRB solely to speak in person, or by written statement, and was denied the ability to address the Defendant PSRB through legal counsel of his choosing."  [*Id.* at ¶15].

Plaintiffs allege that the State of Connecticut's statutes governing the Psychiatric Security Review Board and the hearings it holds, either facially or as applied, "do not protect the fundamental rights of victims such as Plaintiffs under the Due Process and Equal Protection Clauses."  [*Id.* at ¶17].  First, they claim that their right to present a victim statement pursuant to state statute and PSRB regulation 17a-581-42 was abridged at the May 1, 2009 and November 18, 2011 PSRB hearings, thereby violating their right to Due Process in that they were denied their right to allocution and counsel.  [*Id.* at ¶¶18-21].  Second, they claim that the violations of their rights to allocution and counsel have unconstitutionally infringed on their rights to Equal Protection, "because these restrictions are not imposed on victims who participate in the criminal justice system.  Victims of crimes in which the perpetrator is adjudicated to be not guilty

---

[1] There is no allegation that any of the Plaintiffs appeared in person at this meeting.

by reason of mental illness or disease, are afforded disparate and inferior constitutional protections under existing Connecticut law, which disparity is not justified by a rational state interest."  [*Id.* at ¶25].

Third, the Plaintiffs claim that the PSRB's limitations in consideration of an acquittee's danger with regard to his potential for conditional release, defined as "the risk of imminent physical injury to others or self" and which "also includes the risk of loss or destruction of the property of others," violates their Due Process rights in that it unconstitutionally prohibits the PSRB from considering evidence of the risk of non-imminent danger to self and others, including evidence of the risk of non-physical injury such as anxiety to the Plaintiffs caused by the acquittee's release.  [*Id.* at ¶¶26-29].  Lastly, the Plaintiffs allege that these restrictions on consideration of the Plaintiffs' non-physical injury infringe their rights to Equal Protection, as "these restrictions are not imposed on victims who participate in the criminal justice system."  [*Id.* at ¶33].

## III.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 15, which governs Amended and Supplemental Pleadings, provides that a party may amend a pleading at this juncture "only with the opposing party's written consent or with the court's leave," which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  A court should deny leave to amend only upon a showing of

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (same). "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009). A proposed amendment is also futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty*, 282 F.3d at 88. *See also Basile v. Connolly*, 538 F. App'x 5, 8 (2d Cir. Sept. 3, 2013) ("while a district court generally should not dismiss a pro se complaint without granting the plaintiff leave to amend, such leave is not necessary when it would be futile.").

"'To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of 'entitlement to relief.' "  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993);

9

*Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).  Here, the Plaintiffs have filed a Motion for Declaratory Judgment, a Motion for Preliminary Injunction, and a Motion to Dismiss in which they refer and to which they have attached various exhibits, including transcripts of PSRB hearings.  The Court will consider these attachments and the arguments made in the Plaintiffs' motions.

## IV.    <u>Analysis</u>

The Plaintiffs' Due Process and Equal Protection claims would not survive a motion pursuant to Rule 12(b)(6) and no amendment of these claims could cure their deficiencies.  Thus, amendment of the Plaintiffs' complaint to name the correct municipal officer defendant would be futile, as the deficiencies in the Plaintiffs' due process and equal protection claims cannot be cured.

### a.  <u>Procedural Due Process</u>

The Plaintiffs claim that they have been subjected to a series of continuing violations of their rights to due process by the PSRB, which has allegedly deprived them of the right to speak at PSRB hearings and the right to counsel. They also allege that the Connecticut statutes and regulations applicable to the PSRB facially or as applied violate the Constitution's guarantee of procedural Due Process.  The Defendant PSRB argues in its motion to dismiss that the Plaintiffs have articulated no protected liberty interest such that they are entitled to due process at PSRB hearings.  [Dkt. 20-1, MTD p. 18].  Plaintiffs counter that they have asserted a protected liberty interest, classifying this interest in

separate places in their opposition to the Motion to Dismiss as a liberty interest in "having the man who killed your mother, sister, or child released without due consideration of its impact on your mental state," an interest in "that David Messenger's release will impact them emotionally, and may threaten their physical safety," and a liberty interest in "Plaintiff(s)' mental health, and physical and emotional well-being."  [Dkt. 23-1, Ps' Opp. to MTD pp. 4, 8-9, 12].  Although the PSRB has moved to dismiss this case on substantive due process grounds (in the event that the Eleventh Amendment did not bar Plaintiffs' claims entirely), the Plaintiffs have countered that their suit implicates *only* procedural due process, and thus they make no substantive due process arguments.[2]

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law..."  U.S. CONST. Amend. XIV.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "In procedural due process claims, the deprivation by state

---

[2] "These Plaintiffs allege procedural due process violations in the PSRB process, whereby they have been deprived of the opportunity to: present evidence of emotional as opposed to physical threat by the acquittee's release; present evidence of longer term or future threat posed by the acquittee's release, as opposed merely to 'imminent' threat; be fairly and fully represented by counsel; comment on evidence relevant to the acquittee's threat to public or victim safety. Nor have Plaintiffs been afforded notice or a hearing regarding these interferences with their rights."  [Dkt. 23-1, Ps' Opp. to MTD, pp. 1-2].  The Plaintiffs also assert that they "have established well-pleaded violations by Defendant of their *procedural* due process rights; they are not required to establish a substantive due process claim, for money damages or otherwise, against the Defendant."  [*Id.* at 19-20].

action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  Further, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.  Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126.  Due process "is a flexible concept that varies with the particular situation." *Id.* at 127.

Courts employ a two-step process for determining whether procedural due process has been violated: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

> The types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than an abstract need or desire, and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Id.*  "A liberty interest may arise from either of 'two sources—the Due Process Clause itself [or] the laws of the States.'" *Rodriguez v. McLoughlin*, 214 F.3d 328, 337 (2d Cir. 2000) (quoting *Kentucky Dep't of Corrections*, 490 U.S. at 460). Explaining the liberty interest, the Supreme Court has stated that

> **The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint.  The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests.  In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry, …; to have children, …; to direct the education and upbringing of one's children, …; to marital privacy, …; to use contraception, …; to bodily integrity, …, and to abortion.  We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment.**

*Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997) (internal citations omitted).

In sum, for the Plaintiffs to prevail on their Procedural Due Process claims in this action, they must demonstrate that they have a cognizable liberty or property interest or fundamental right stemming from either the Due Process clause or from state law that has been deprived without due process of law.

## i.  Deprivation of Life, Liberty, or Property

The Plaintiffs here contend that they have a protected liberty interest stemming *directly* from the Due Process Clause, rather than from a right granted to them by Connecticut's statutes and regulations.[3]  They allege that they are constitutionally entitled under the Due Process Clause to be represented by

---

[3] Indeed, in their opposition to the Defendant's Motion to Dismiss, the Plaintiffs state that they "do not claim Connecticut General Statutes or the Connecticut Constitution, or the PSRB Rules, as a source of rights for victims to make impact statements; they claim Defendant's process promulgated thereunder unconstitutionally restricts basic victims' rights (facially or as applied). . . . Plaintiffs do not claim as a source of these rights some non-existent state law protection: they are all grounded firmly in causes of action which specifically invoke the federal Due Process and Equal Protection Clauses, without recourse to any state-derived right."  [Dkt. 23-1, Ps' Opp. to MTD, pp. 17-18].

counsel at PSRB hearings, and that they are constitutionally entitled to be heard at PSRB hearings, including the ability to comment on evidence presented at the hearing and to have the PSRB consider evidence of their own future emotional harm should the acquittee be released.  [Dkt. 22, Declaratory Judgment Motion, §§ a), b), c)].  Plaintiffs allege that these rights have been proscribed by the State of Connecticut's statutes and regulations governing the PSRB.

First, the Plaintiffs have not cited to any authority – and the Court can find none – supporting their claim to a liberty interest springing from the Due Process Clause, or to any authority suggesting that they have a constitutional, fundamental right to either be represented by counsel in PSRB hearings or to present and have the PSRB consider evidence of their own future emotional harm in determining whether an acquittee is mentally healthy and no longer a danger to the community.  In cursory fashion, the Plaintiffs argue that "[t]he liberty interest complained of here – having the man who killed your mother, sister, or child released without due consideration of its impact on your mental state – surely is at least as much of a liberty interest as a commercial interest such as reputation." [Dkt. 23-1, Ps' Opp. to MTD, pp. 8-9].  They also assert that "Defendant's Motion to Dismiss, much like the PSRB Rules, reveals a State that is elevating false protections for the acquittee above basic protections for victims.  Our courts do not support such a stance."  [*Id*. at 10].  Plaintiffs further argue that "where property, money, employment, and reputation have all been acknowledged as worthy of constitutional protection, it hardly seems that Plaintiffs' liberty interests are beneath procedural recognition and protection."  [*Id*. at 19].  The Plaintiffs,

however, have failed to cite to any authority supporting their contention that the "courts do not support such a stance" or that they have a liberty interest inherent in the Due Process Clause to their mental and emotional well-being that is breached by them not being allowed to comment on evidence presented at a post-acquittal hearing.  They also have failed to cite any support for their contentions that their right to counsel, their right to comment on the professional evidence presented, and their right to have the PSRB consider their future emotional harm are constitutionally protected in the context of hearings regarding an acquittee's mental health and danger to the community.

This problem plagues the Plaintiffs' Motion for Preliminary Injunction as well, where the Plaintiffs cite not a single case applying any Procedural Due Process concept, let alone any case applicable to victims of crime.  Instead, the Plaintiffs argue that victims of crime "must be afforded Constitutional protection" and that victims of acquittees "possess fewer (if any) rights in administrative or adjudicative proceedings than victims in criminal proceedings."  [Dkt. 4-4, PI p. 8].  As in their other filings, the Plaintiffs do not explain the rights to which victims in criminal proceedings are entitled, whether such victims possess rights in the post-sentencing process, or in what ways these rights differ from those afforded to the Plaintiffs.   While the Connecticut constitution gives crime victims certain rights in connection with criminal prosecutions, it does not afford crime victims the right to be heard in post-sentencing proceedings.  A crime victim has only the "right to information about the arrest, conviction, sentence, imprisonment and release of the accused."  Connecticut Constitution Article 1,

Section 8(b).  That subsection further states that it does not and shall not be construed as "creating a basis for vacating a conviction or ground for appellate relief in any criminal case."

As to the likelihood of success on the merits of their claims or the demonstration of sufficiently serious questions going to the merits of their claims, a required element of a preliminary injunction motion, the Plaintiffs conclusorily allege that their due process rights have been compromised by their alleged denial of right to counsel and allocution.  Nowhere do the Plaintiffs allege the interest allegedly abridged, explain why they are entitled to Due Process protection in the first instance, or discuss a single case relating to Due Process on which this Court could formulate inherent due process rights previously unenumerated.  The Plaintiffs' Motion for Declaratory Judgment is similarly lacking.

Second, the Plaintiffs have failed to successfully identify a liberty interest abridged by the PSRB's conduct or the law governing it.  The Plaintiffs chiefly contend that, although the state is not obligated to ultimately protect them from David Messenger, it has deprived them of the only procedural safeguards they have – the right to be heard in the process that could release him into the community – which "disables victims from protecting themselves in the only meaningful legal/administrative process where they might do so," and prevents them from presenting evidence as to the emotional harm an acquittee's release may have on them.  [Dkt. 23-1, Ps' Opp. to MTD, pp. 23-24].

The Plaintiffs' arguments are flawed.  The Plaintiffs do not buttress their claim with the opinion of an expert with, nor do they claim to have, any expertise in determining whether or when a mentally ill citizen has regained his sanity such that he may be conditionally released into the community without endangering the public at large.  Absent such expertise, Plaintiffs fail to show their attorney's statements might be relevant and probative.  By contrast, the PSRB is made up of six members: a psychiatrist, a psychologist, a person with substantial experience in the process of probation, an attorney barred in Connecticut, a member of the public with substantial experience in victim advocacy, and a member of the general public.  Conn. Gen. Stat. § 17a-581.  It is statutorily required to consider, in rendering a decision on conditional discharge of an acquittee, whether the acquittee is one whose "final discharge would constitute a danger to himself or others but who *can be adequately controlled with available supervision and treatment on conditional release*."  Conn. Gen. Stat. § 17a-580(9).  "Danger to self or others" is defined as "the risk of imminent physical injury to others or self, and also includes the risk of loss or destruction of the property of others."  Regs. Conn. State Agencies § 17a-581-2(6). By alleging a deprivation of a right to be *substantively* heard as to information about their own emotional well-being, the Plaintiffs are injecting into the PSRB's consideration process an irrelevancy: the emotional impact an acquittee's release will have on *them*.  The emotional impact on the victims, however, has nothing to do with whether an acquittee has regained his mental health and is fit to be returned to the community.  Thus, the Court cannot conclude that, by not allowing the Plaintiffs to comment on

evidence presented at PSRB hearings regarding David Messenger's mental health, or by not considering the emotional impact of David Messenger's potential release on the Plaintiffs, that the state or its agents "in some way [ ] assist[s] in creating or increasing the danger to the victim[s]" posed by David Messenger's release such that the PSRB hearing would be able to confer an inherent liberty interest on the Plaintiffs.

Moreover, this Court's research demonstrates that courts are reluctant to assign inherent Due Process rights to victims of crime (not committed by acquittees), whose rights during and after prosecution are limited. *See, e.g., Dix v. Cnty. of Shasta*, 963 F.2d 1296, 1298-99 (9th Cir. 1992), overruled on other grounds, *Sandin v. Conner*, 515 U.S. 472 (1995) (crime victims did not have liberty interest derived from Due Process Clause in becoming involved in the prosecution and sentencing of a criminal defendant, or in the incarceration of criminals); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993) (state victim impact law did not provide liberty interest to murder victim's mother to participate at hearing where charge was reduced and perpetrator pled guilty to negligent homicide; Ohio law did not specify how victim's statement must affect hearing or require particular outcome based on what victim has said); *Hagen v. Com.*, 437 Mass. 374 (2002) (Massachusetts crime victims' bill of rights, which afforded crime victims the right to be informed of and participate in criminal prosecutions, did not confer standing upon victim to seek a stay of execution of convicted criminal's sentence; victim of crime does not have a legally cognizable interest in the prosecution or nonprosecution of another; victim's due process

rights were thus not implicated); *Reed v. Becka*, 333 S.C. 676, 683 (S.C. Ct. App. 1999) (a victim of crime possesses no rights in the appellate process, nor the right to veto a plea agreement, even though victims possess "numerous valuable rights at the trial level"); *State v. Adkins*, 702 So.2d 1115, 1119 (La. App. 1997), writ denied, 706 So.2d 998 (La. 1998) (state victims' rights act did not give victims any right to determine who would be in charge of the investigation and prosecution or to determine when the defendant was to be brought to trial; questions of whom to indict and how soon to proceed to trial are at discretion of prosecution); *Johnston v. State*, 702 N.E.2d 1085, 1088 (Ind. App. 1998) transfer granted, opinion vacated, 714 N.E.2d 167 (Ind. 1999) and opinion adopted in part, vacated in part sub nom. *Johnston v. Dobeski*, 739 N.E.2d 121 (Ind. 2000) overruled on other grounds by *State v. Hernandez*, 910 N.E.2d 213 (Ind. 2009) (crime victims lack standing to contest a sentencing judge's decision to grant a downward modification of a defendant's sentence).

Absent any affirmative authority to do so, this Court will not depart from substantial precedent to create a liberty interest stemming directly from the Due Process Clause where none has previously existed, nor can this Court conclude that the Plaintiffs' due process claims could succeed in the face of a motion to dismiss.  Where victims generally have no cognizable interest in the prosecution or nonprosecution of another, this Court will not expand existing jurisprudence to declare a Due Process right of victims of acquittees to comment on the evidence in continuing mental health hearings, where the same victims would have had no legally cognizable interest in the state not prosecuting the acquittee in the first

instance.  *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Kelly v. Dearington*, 23 Conn. App. 657, 662 (1990) (quoting same); *Tarabolski v. Williams*, 642 N.E.2d 574, 574-75 (Mass. 1994) (same); *Gansz v. People*, 888 P.2d 256, 257 (Colo. 1995) (Colorado state constitution does not confer legal standing upon an alleged crime victim to appeal an order granting the district attorney's motion to dismiss a criminal charge or to contest or be heard on a district attorney's motion to dismiss a criminal action).  Nor will this Court create a fundamental Due Process right of victims of acquittees to be represented by counsel at the mental health hearings of acquittees absent any argument by the Plaintiffs that such a fundamental right exists.  The Court declines Plaintiffs' invitation to declare inherent due process rights for victims of crime where none have previously existed absent any cogent argument backed by either authority directly on point or authority by which this Court could draw parallels, particularly where the Connecticut constitutional provision creating victim rights only gives victims the right to information concerning release.

In sum, the Plaintiffs assert that "Connecticut law, including the PSRB's regulations, violate *federal* law.  To wit, Plaintiffs allege that the PSRB's regulations *are the violation*."  [Dkt. 23-1, Ps' Opp. to MTD, p. 17].  In effect, the Plaintiffs are asking this Court to provide them with *more* rights than they are

afforded pursuant to Connecticut's statutory scheme governing hearings for those found to be not guilty by reason of mental defect.  To do this, the Plaintiffs would have this Court effectively read into the Due Process Clause of the U.S. Constitution a victim's liberty interest in the mental health hearing of a person adjudged not guilty by reason of mental illness, such that victims could assert a right to substantively participate in the PSRB's determination of whether an acquittee has regained his mental health and is no longer a danger to himself or to society.  The Court finds no legal support for doing so.  Accordingly, the Plaintiffs' assertion that they have a liberty interest stemming from this participation in PSRB hearings granted by the Due Process Clause itself cannot survive a motion pursuant to Rule 12(b)(6). Further, the Plaintiffs have provided and this Court can conceive of no legal basis on which the Plaintiffs could amend their claim such that it would survive a 12(b)(6) motion.

### ii.  <u>Procedure Afforded by the PSRB Process</u>

However, *even if* the Plaintiffs have articulated a cognizable liberty interest springing directly from the Due Process Clause in their desired participation in PSRB hearings such that their claims could survive a Rule 12(b)(6) motion, which this Court holds that they have not, the Plaintiffs have not been facially deprived of any rights through the PSRB's process.  Their claim is thus doubly futile.

The Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted).  Due

process further requires that "a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it."  *Id*. at 348.  In weighing what procedural safeguards are necessary under the Constitution, a court considers

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  "Applying this test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon*, 494 U.S. at 127 (collecting cases; emphasis in original).

Connecticut allows a criminal defendant to assert as an affirmative defense that he "lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."  Conn. Gen. Stat. § 53a-13(a).  The Supreme Court has held that a verdict of not guilty by reason of insanity "establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness."  *Foucha v. Louisiana*, 504 U.S. 71, 76 (1992).  "The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness."  *Jones v. United States*, 463 U.S. 354,

368 (1983); *see also Clark v. Arizona*, 548 U.S. 735, 779 n. 45 (2006) (same).  This purpose differs from the punitive purpose of those convicted of crime:

> [a] State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution.  But there are constitutional limitations on the conduct that a State may criminalize.  [In the case of acquittees], the State has no such punitive interest.

*Foucha*, 504 U.S. at 80.  *See also Jones v. U.S.*, 463 U.S. at 369 (noting that a state may punish a person convicted of a crime even if satisfied that he is unlikely to reoffend, but that "[d]ifferent considerations underlie commitment of an insanity acquittee. As he was not convicted, he may not be punished.  His confinement rests on his continuing illness and dangerousness").  Thus, "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous."  *Jones*, 463 U.S. at 368; *Foucha,* 504 U.S. at 77 (quoting same); *Richard S. v. Carpinello*, 589 F.3d 75, 81 (2d Cir. 2009) ("The United States Supreme Court has long held that the Due Process Clause allows an insanity acquittee to be confined as long as he is both mentally ill and dangerous, but no longer.").  Once an aquittee has been cured and regains his sanity, his continued detention is unconstitutional.  *Lynch v. Overhoser*, 369 U.S. 705 (1962).

The Connecticut Supreme Court, too, has held that "the confinement of insanity acquittees, although resulting initially from an adjudication in the criminal justice system, is not punishment for a crime."  *Payne v. Fairfield Hills Hosp.*, 215 Conn. 675, 683-84 (1990).  Rather, "[t]he purpose of [an acquittee's] commitment 'is to treat the individual's mental illness and protect him and society from his potential dangerousness."  *State v. March*, 265 Conn. 697, 715-16 (2003);

*see also Payne*, 215 Conn. at 683-84 (same).  Thus, "as a matter of due process, an acquittee is entitled to release when he has recovered his sanity or is no longer dangerous."  *State v. March*, 265 Conn. at 714.  However, "as long as an acquittee has a mental illness that requires confinement for purposes of treatment and protection [even if this illness is different from that forming the basis of his confinement], his confinement to a psychiatric facility is reasonably related to the purpose of commitment and is, therefore, constitutional."  *Id.* at 715-16 (citations omitted).

The hearing process before the PSRB must take into account these considerations, and the Court must consider these overarching dictates when analyzing whether Connecticut's statutory and regulatory strictures comport with the Due Process Clause as relating to victims of acquittees, who are not parties to hearings before the PSRB.  Connecticut statute dictates that

> [a]t any hearing before the board considering the discharge, conditional release or confinement of the acquittee … the board shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, shall do one of the following: (1) If the board finds that the acquittee is a person who should be discharged, it shall recommend such discharge to the court … (2) If the board finds that the acquittee is a person who should be conditionally released, the board shall order the acquittee conditionally released subject to such conditions as are necessary to prevent the acquittee from constituting a danger to himself or others.  (3) If the board finds that the acquittee is a person who should be confined, the board shall order the person confined in a hospital for psychiatric disabilities …

Conn. Gen. Stat. § 17a-584.

The statute and regulations governing the PSRB define an acquittee who should be conditionally released as one who is mentally ill "to the extent that his final discharge would constitute a danger to himself or others but who can be adequately controlled with available supervision and treatment on conditional release." Conn. Gen. Stat. § 17a-580(9); Regs. Conn. State Agencies § 17a-581-2(a)(9).  A "person who should be confined" is "an acquittee who is mentally ill … to the extent that his discharge or release from the hospital on conditional release would constitute a danger to himself or others, and who cannot be controlled adequately with available supervision and treatment on conditional release." Regs. Conn. State Agencies § 17a-581-2(a)(10).  "Danger to self or others" means "the risk of imminent physical injury to others or self, and also includes the risk of loss or destruction of the property of others," and mental illness refers to any mental illness or disease as defined by the current Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association, including any mental illness "in a state of remission which may become active with reasonable medical probability." *Id.* at § 17a-581-2(a)(5), (6); *see also* Conn. Gen. Stat. § 17a-580(5).  A person who should be discharged from the PSRB's authority, on the other hand, is "an acquittee who is not mentally ill … to the extent that his discharge would constitute a danger to himself or others." Regs. Conn. State Agencies § 17a-581-2(a)(11).

PSRB hearings are open to the public and the acquittee bears the "burden of proving by a preponderance of the evidence the existence of conditions warranting a less restrictive order" than the order then-currently in place.  Conn.

Gen. Stat. § 17a-596(d), (f).  The PSRB must consider all evidence available to it that is "material, relevant and reliable regarding the issues before the board" and includes, but is not limited to, the trial record, "the information supplied by the state's attorney or any other interested party, including the acquittee, and information concerning the acquittee's mental condition and the entire psychiatric and criminal history of the acquittee."  Conn. Gen. Stat. § 17a-596(b).  At hearings the Board must, "as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence."  Conn. Gen. Stat. § 4-178 (as cited by Regs. Conn. State Agencies § 17a-581-24).

An acquittee granted conditional release by the Board is subject to continuing PSRB monitoring; the PSRB may designate a person or agency to supervise the acquittee (Conn. Gen. Stat. § 17a-589), may require the acquittee to "report to any public or private mental health facility for examination," which facility "shall furnish reports to the board on a regular basis concerning the status of the acquittee and the degree to which the acquittee is a danger to himself or others" (Conn. Gen. Stat. § 17a-590), and is subject to modification of conditional release (Conn. Gen. Stat. § 17a-591).  Further, an acquittee is subject to a "conditional release plan" addressing the concerns of housing, mental health, supervision, and any special conditions to be imposed.  The PSRB must review the plan and "shall determine whether the[se] concerns [ ] are addressed in a manner adequate and necessary to insure public safety."  Regs. Conn. State Agencies § 17a-581-22.

If an acquittee violates the terms of conditional release, his mental health has changed, or his continued release "would constitute a danger to himself or others," the PSRB may revoke conditional release and order the acquittee to be returned to psychiatric confinement.  Conn. Gen. Stat. § 17a-594.  To be discharged from the custody of the PSRB, an acquittee or the PSRB must apply to the Connecticut superior court, which is obligated to "make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society," determine whether the acquittee should be discharged from custody.  Conn. Gen. Stat. § 17a-593.

Connecticut statutes and the regulations governing the PSRB also provide various rights to victims of crime perpetrated by a committed acquittee.  A "victim" is defined as "a person who is a victim of a crime, the legal representative of such person or a member of a deceased victim's immediate family."  Conn. Gen. Stat. § 17a-601(a).  The PSRB is obligated to "make a reasonable effort to notify the victim of any board hearings or orders or of any escape of the acquittee."  Conn. Gen. Stat. § 17a-601(b).  This notice must be written and given "within a reasonable time."  Regs. Conn. State Agencies § 17a-581-15.  A victim "may appear at any court or board hearing concerning the acquittee to make a statement."  Conn. Gen. Stat. § 17a-601(b).  The regulations governing the PSRB clarify that a victim "shall have the right to be present at any hearing, and to make a statement at the hearing, expressing his/her opinion(s) on the matter before the Board.  The victim may submit such a statement in writing prior to the hearing to be entered into the record if the victim is not present at the

hearing."  Regs. Conn. State Agencies § 17a-581-42.  Within twenty-five days of the conclusion of any PSRB hearing, the PSRB must provide written notice of its decision to the acquittee, the acquittee's counsel, the state's attorney, and any victim.  Conn. Gen. Stat. § 17a-596(h).

It is in this context that this Court must analyze the process due to the victims in this case.  First, as noted by both the U.S. and Connecticut Supreme Courts, acquittees are not subject to criminal liability specifically because of the existence of a mental illness.  The PSRB, while exercising custodial control over acquittees, does so not for punitive reasons, but for the purpose of treatment until acquittees reach a point where they have recovered their sanity or are no longer dangerous.  Second, although they necessarily possess personal interests in the outcome of a PSRB hearing, it is important to note that an acquittee's victims are not parties to these hearings (just as victims are not parties to a criminal prosecution).  Although they are not parties, the State statutory scheme clearly affords victims the right to reasonable notice of any PSRB hearing involving the acquittee in whom they have an interest, and the Plaintiffs here do not allege that they have been deprived of such notice.

While the Connecticut Constitution does not afford crime victims the right to be heard on the release of a defendant, Connecticut regulations afford victims of an acquittee that right.  Victims of acquittees are also afforded "the right to be present at any hearing, and to make a statement at the hearing expressing his/her opinion(s) on the matter before the Board."  Moreover, "The victim may submit such a statement in writing prior to the hearing to be entered into the record if the

victim is not present at the hearing."  Regs. Conn. State Agencies § 17a-581-42. The Plaintiffs allege that this regulation is facially deficient to protect their due process rights without explaining how this regulation is deficient or to what additional process they are due.  [Dkt. 22, Decl. Jgmnt. Motion, ECF p.16]. Plaintiffs apparently believe that they must be afforded, pursuant to this regulation, the right to make *both* an oral and written statement, or the right to submit a written statement and *also* have their legal representative speak on their behalf at PSRB hearings; the Plaintiffs essentially challenge the PSRB's interpretation of this Rule as an either/or statement.

The Plaintiffs, however, have failed to articulate why they believe that they are entitled to both a written and oral statement pursuant to the Due Process Clause or this Rule, or how the absence of both options has compromised their rights.  The Rule is clearly constructed in the alternative; a victim (defined as "a person who is a victim of a crime, the legal representative of such person or a member of a deceased victim's immediate family") is entitled to make a statement at a hearing, and "*may* submit such a statement in writing prior to the hearing to be entered into the record *if the victim is not present at the hearing.*"  Thus, a written statement declares a victim's intent not to attend (or have someone attend in his stead) or speak at a hearing; nothing in this Rule requires the PSRB to allow a victim to both submit a written statement and to present a statement at a hearing.  Plaintiffs' apparent claim that the PSRB's application of this Rule is faulty is erroneous; it appears that the PSRB interprets this Rule in exactly the same way as the Rule is written and in which this Court interprets it: in the

**29**

alternative.  Absent any clear reason to do so, this Court will not vest in the Plaintiffs a new right to present both oral and written statements to the PSRB, and does not conclude that this Rule is facially deficient in protecting a victim's interest in making a statement to the PSRB solely because it gives victims an option as to the method of transmission of their statement.  Moreover, as will be articulated in section IV.b, the statutes and regulations applicable to victims of crime *not perpetrated by acquittees* are constructed nearly identically, conferring on them the same alternate right to present a written or oral statement, even though the Plaintiffs assert that their own rights to allocution are abridged in ways in which the rights of such crime victims are not.  This claim cannot withstand a motion to dismiss pursuant to Rule 12(b)(6) and amendment would be futile.

Connecticut's process also allows a victim to be represented by counsel, as the definition of "victim" specifically encompasses the "victim of a crime" *or* "the legal representative of such person."  The Plaintiffs have not offered an explanation for their claim that Connecticut's statutes and regulations are facially unconstitutional in this regard.  Where the statute specifically contemplates that a "legal representative" may act in place of the victim of a crime, this Court cannot conclude that this process facially deprives the Plaintiffs of access to counsel, especially where, as here, various Plaintiffs chose not to attend PSRB hearings, chose to speak for themselves in writing prior to the hearings, and did not reserve any right to have counsel supplement their written statements.

While consideration of potential harm that an acquittee may cause to the public in general and to the victim in particular is part and parcel of the process of determining whether an acquittee is sane and his detention thus no longer constitutional, continued detention of a sane acquittee based the potential emotional harm to a victim from the mere knowledge that the acquittee is no longer detained is anathematic to the purpose of an acquittee's commitment, namely to treat the individual's mental illness and protect him and society from his potential dangerousness stemming from that illness.  Assessing dangerousness in this manner would open the floodgates to continuing the commitment of any number of acquittees who have regained their sanity and pose no actual danger to the community until their victims are no longer subject to anxiety at the thought of the acquittees' freedom.  This, of course, is insupportable in the face of the Supreme Court's repeated proclamation that an acquittee is entitled to be released when he "has recovered his sanity or is no longer dangerous."  *Jones v. United States*, 463 U.S. 354, 368 (1983).  Nowhere in this entitlement is the proscription that an acquittee's victims must also be free from anxiety as a precondition to an acquittee's release.  No facial Procedural Due Process violation arises where the statutory scheme is absent as to consideration of future mental harm to an acquittee's victims, as future mental harm to victims is in no way related to whether an acquittee remains either dangerous or afflicted by mental illness.  *See also Sastrom v. Psychiatric Sec. Review Bd.*, 291 Conn. 307, 331 (2009) ("decisions with respect to the danger the acquittee poses to others and the appropriateness and type of treatment are best

left to the professional discretion of the board").  Consequently, the Plaintiffs'
claim cannot withstand a motion pursuant to Rule 12(b)(6) and no amendment
can cure this claim.

Moreover, there is no reason to find that Connecticut's statutory process is
deficient where it allegedly does not allow the PSRB to consider non-imminent
danger to the victims or society, as Plaintiffs allege.  First, David Messenger has
only been subject to conditional release hearings.  He has not – nor have the
Plaintiffs alleged – that he has been the subject of a PSRB or court hearing that
would discharge him from the PSRB's custody altogether.  The Plaintiffs argue
that the PSRB is limited to considering "imminent physical injury to self or
others" in assessing an acquittee's danger.  However, the Plaintiffs have
disregarded the various procedural safeguards in place when conditional release
is granted, as detailed previously.  An acquittee may only be conditionally
released if he is "an acquittee who is mentally ill … to the extent that his final
discharge would constitute a danger to himself or others but who can be
adequately controlled with available supervision and treatment on conditional
release."  Regs. Conn. State Agencies § 17a-581-2(a)(9).

Acquittees granted conditional release, then, are those who *necessarily*
still pose a danger to themselves or others when not under mental health
supervision, but who are controllable through the various safeguards the PSRB
has put in place, and who continue to suffer from a mental illness.  Conditional
release is unavailable to acquittees who pose a danger but who "cannot be
controlled adequately with available supervision and treatment on conditional

**32**

release." § 17a-581-2(a)(10).  Thus, the focus of the PSRB's inquiry into conditional release is not whether an acquittee will pose a risk to himself or others sometime in the undefined future, but whether the PSRB can control the risk of danger an acquittee poses with the resources it has available.  If it cannot, conditional release is improper.

Contrary to the Plaintiffs' apparent argument, the PSRB has no authority to confine acquittees indefinitely if they no longer suffer from a mental illness, regardless of the mental or emotional state of the acquittee's victims.  In *Foucha v. Louisiana*, the Supreme Court held that an acquittee who no longer suffered from a mental illness could not be confined where the state could not prove "by clear and convincing evidence that [the acquittee was] demonstrably dangerous to the community," as it was not enough to defeat the acquittee's liberty interest under the Constitution in being freed from indefinite confinement in a mental facility and where, should the acquittee commit criminal acts in the future, the state's interest would be "vindicated by the ordinary criminal processes involving charge and conviction, the use of enhanced sentences for recidivists, and other permissible ways of dealing with patterns of criminal conduct."  504 U.S. 71, 81 (1992).  Indeed, the Connecticut Supreme Court has classified an acquittee's right to be released from confinement in the alternative: "as a matter of due process, an acquittee is entitled to release when he has recovered his sanity *or* is no longer dangerous."  *State v. March*, 265 Conn. 697, 714 (2003) (emphasis added).  Where the Supreme Court of this nation has espoused such principles, this Court will not declare the "imminent" danger requirement in Connecticut's scheme –

33

which parallels the Supreme Court's own classification of danger – to be a violation of due process.  Plaintiffs' claim thus cannot survive a motion pursuant to Rule 12(b)(6) and cannot be cured by further factual allegations.

Moreover, and quite simply, the Plaintiffs do not allege that they have been deprived of the right to present information as to their own ongoing emotional or mental distress in the victim statements that they are specifically afforded the right to make.  Instead, the Plaintiffs only contend that the PSRB may not consider this information in determining Messenger's dangerousness.  The Court is not persuaded that the PSRB cannot consider reliable evidence of emotional distress which a victim may suffer based on the dangerousness of an acquittee which is material and relevant, as developed below.  The Plaintiffs may therefore certainly furnish such information to the PSRB in their victim statements.

Nor is Connecticut's statutory and regulatory regime constitutionally deficient where it does not afford victims the explicit right to comment on evidence presented at a PSRB hearing.  As will be discussed *infra*, the Plaintiffs' complaint stems from the PSRB's interruption of Plaintiffs' Attorney Klar as he was attempting to comment on evidence by a doctor as to Messenger's then-current diagnosis and mental illness status.  The Board's refusal to permit a lay person from commenting on expert testimony on which the lay person has no experiential or professional basis to comment simply does not constitute a facial denial of due process or of a victim's right to "make a statement at the hearing, expressing his/her [lay] opinion(s) on the matter before the Board."

As previously discussed, the PSRB must consider all evidence available to it that is "material, relevant and reliable regarding the issues before the board." The overarching issue before the PSRB in David Messenger's PSRB hearings has been the status of Messenger's mental illness and whether Messenger should be granted temporary leave or conditional discharge given his then-current diagnosis, the danger to himself or others, and the ability of the PSRB to control any dangerousness if granted leave or conditional release.  A victim (which includes a legal representative) who possesses no qualifications to speak to an acquittee's diagnosis or mental health status and no factual basis for doing so likewise possesses no ability to offer reliable testimony in relation to evidence offered by an expert as to the acquittee's diagnosis.  As the Board must, "as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence" and that which is unreliable, a lay victim's statement commenting on expert evidence is simply not probative.

Moreover, there is no indication in the statutes or regulations that a victim would be prevented from including in a written or oral statement to the Board factual content tending to demonstrate that an acquittee posed a danger to himself or others, or that an acquittee had engaged in acts tending to demonstrate mental illness.  For instance, the statutes and regulations do not facially prevent a victim from giving a statement to the PSRB detailing that an acquittee has improperly attempted to contact a victim, that an acquittee has made threats to a victim or others since his commitment (demonstrating potential dangerousness), that an acquittee has admitted to the victim that he continues to

suffer from delusions (demonstrating illness), or that a victim has witnessed an acquittee in the throes of what the victim believes to be psychosis since his commitment (also demonstrating illness).  Such information would be relevant to the central issues before the PSRB if such statements had a factual basis. However, the scheme rightly excludes immaterial evidence, and a lay victim's or his lay attorney's comments solely indicating displeasure or taking issue with a doctor's diagnosis of the acquittee (or any opinion presented by an expert) without any then-current factual basis for such conclusion does not address an issue before the PSRB and is neither material nor relevant.  Exclusion of such statements does not constitute a denial of due process.

The Court also notes that the PSRB consists of six members: a psychiatrist, a psychologist, a person with substantial experience in the process of probation, an attorney barred in Connecticut, a member of the public with substantial experience in victim advocacy, and a member of the general public. Conn. Gen. Stat. § 17a-581.  As the Connecticut Supreme Court has noted, "decisions with respect to the danger the acquittee poses to others and the appropriateness and type of treatment are best left to the professional discretion of the board."  *Sastrom v. Psychiatric Sec. Review Bd.*, 291 Conn. 307, 331 (2009) (holding that "while the board's consideration of an acquittee's placement must focus first on the interests of society, the board also must facilitate the care and treatment needs of the acquittee. Confinement under conditions of maximum security [as determined by the PSRB] reasonably could further both purposes."). It follows that decisions as to what constitutes material or immaterial evidence,

36

too, are best left to the PSRB, which includes members with expertise in five different areas.

Lastly, the Court notes that victims of crimes committed by acquittees possess no inherent statutory right to comment on the evidence presented at a PSRB hearing.  Rather, victims possess a right to "make a statement at the hearing, expressing his/her opinion(s) on the matter before the Board."  This statutory construction is effectively identical to other Connecticut statutes that allow victims of non-acquittees, who are not parties to the hearings they attend, to present a statement to the court or to an adjudicatory board.  *See* section IV.b.

As a general matter with regard to each of Plaintiffs' claims for denial of due process, the Court notes that in addition to the process already afforded to victims before and during PSRB hearings, the Regulations also provide a procedure by which persons may petition the PSRB for declaratory rulings on

> (A) The validity of any regulation of the Board, and (B) The applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision, as defined in Connecticut General Statutes, Section 4-166 (3), on a matter within the jurisdiction of the Board.

Conn. Agencies Regs. § 17a-581-58(a)(1).  Petitions may be filed by an individual or by an attorney representing an individual.  *Id.* at § 17a-581-58(b)(1).  Within sixty days of the filing of a petition with the PSRB, the Board must do one of the following in writing:

> (A) Issue a declaratory ruling in accordance with the request in the petition containing the names of all parties to the proceeding, the particular facts upon which it is based, and the reasons for the conclusions contained therein;

**(B) Order that the matter be the subject of a hearing as a contested case;**

**(C) Notify the parties that a declaratory ruling shall be issued by a date certain;**

**(D) Decide not to issue a declaratory ruling and initiate regulation-making proceedings; or**

**(E) Decide not to issue a declaratory ruling, stating the reasons for its action.**

*Id.* at § 17a-581-58(e)(1).  Declaratory rulings are final decisions and may be appealed to the Connecticut Superior Court pursuant to Conn. Gen. Stat. § 4-183.

*Id.* at § 17a-581-58(e)(5).  Although available to the Plaintiffs, there is no indication in the record that the Plaintiffs availed themselves of this administrative and judicial process to raise the challenges which now form the basis of this action.

In sum, the process encompassed in Connecticut's statutes and regulations is more than adequate to represent a non-party victim's procedural due process rights to notice of, make material, reliable and relevant statements regarding, and an opportunity to be present at hearings assessing the dangerousness and mental health of an acquittee.  Victims are afforded specific rights to notice of any hearings and the right to attend hearings, the ability to either make a statement in person or to supply the PSRB with a written statement to be included in the record, and the right to representation by counsel in the process if a victim so chooses.  These procedures fulfill the hallmarks of notice and an opportunity to be heard pursuant to Procedural Due Process, and are not facially unconstitutional.

Consequently, the Plaintiffs' claim that the State's statutes and regulations are facially violative of due process cannot survive a motion pursuant to Rule 12(b)(6) and further amendment will not cure this claim.  Amendment to name the correct defendant would thus be futile, as would amendment of the Plaintiffs' due process claim, as the Plaintiffs cannot address these deficiencies or allege facts sufficient to support this claim.  Amendment is DENIED as futile.

### iii.  Alleged Deprivations of Due Process Specific to the Plaintiffs

Lastly, even if the Plaintiffs' foregoing arguments could survive a motion pursuant to 12(b)(6), which the Court concludes they cannot, any amendment would still be futile as the Plaintiffs here have not demonstrated that they have been deprived of due process pursuant to Connecticut's scheme in the context of the particular circumstances of this case.  Rather, the record demonstrates that the PSRB complied with Connecticut's statutes and regulations and that the Plaintiffs were not deprived of due process during the three hearings in which they believe their constitutional rights were violated.

### 1.  Observations about Evidentiary Record

First, the Plaintiffs allege that at a hearing[4] on May 1, 2009 they appeared through counsel, John Klar, who attempted but was not allowed to make certain

---

[4] The Court notes that the transcript of this hearing designates it as a Mandatory Review pursuant to Conn. Gen. Stat. § 17a-585 and a Temporary Leave hearing pursuant to Conn. Gen. Stat. § 17a-587.  [Dkt. 5-6, Exh. G, 5/1/09 Trans. p.1]. Conn. Gen. Stat. § 17a-585 dictates that "[t]he board shall conduct a hearing and review the status of the acquittee not less than once every two years.  At such hearing the board shall make a finding and act pursuant to section 17a-584."  A temporary leave permits an acquittee "to leave such hospital or the custody of

observations about the evidentiary record, but rather "was interrupted and advised that it was not permissible for victims' counsel to comment on the evidence." [Dkt. 21, Am. Compl. ¶13; see also dkt. 4-4, Ps' PI Motion, ECF p.3/15; dkt. 22, Decl. Jgmnt. Motion ECF p.7 ¶9]. In their motion for declaratory judgment the Plaintiffs cite to a partial transcript of the May 1, 2009 PSRB hearing as illustration, which they included as an exhibit to their motions and which they also reference in their opposition to the Defendant's motion to dismiss. [Dkt. 5-6, Exh. G, 5/1/09 Trans.; dkt. 22, Decl. Jgmnt. Motion ECF pp.7, 18; dkt. 23-1, Ps' Opp. to MTD, ECF p.35; dkt. 4-4, Ps' Motion for PI, ECF p.3]. This transcript, which is also incorporated by reference into the complaint, records the following exchange:

> Mr. Klar: …Dr. Trueblood has pointed out that he didn't – he has not disclosed as much as expected to, and also has opined that [Messenger] is free of psychotic symptoms. Well how can we rely on the testimony of the psychotic person that he's not hearing voices. That if he isn't forthcoming about a lease, how is he to be forthcoming about voices when he has a motivation to be free, to – to –
>
> Chairman Berger: Counselor –
>
> Klar: Yes, sir?
>
> Berger: - if you could stick to what the impact on the victim is -
>
> Klar: Yes, sir – well –
>
> Berger: -- we would appreciate it.

---

said commissioner temporarily, under the charge of his guardian, relatives or friends, or by himself, at such times and under such conditions as … deem[ed] appropriate" and shall be granted, "subject to such conditions and supervision as the board may set in the order for temporary leave, if it concludes that the acquittee's temporary leave, under the conditions specified, would not constitute a danger to himself or others." Conn. Gen. Stat. § 17a-587(a).

Klar: Yes, thank you.  I'm sorry, I thought I was allowed to make comments on the evidence.

Berger: No, you're not allowed to make comments on –

Klar: I – I'm sorry, I thought – I apologize, I – I didn't mean to be inappropriate.

[Dkt. 5-6, Exh. G, 5/1/09 Trans., 101:1-21].

This exchange reveals that Attorney Klar attempted to offer unreliable evidence.  He explicitly commented on the credibility of the expert opinion of a witness as to Mr. Messenger's diagnosis and his then-current psychotic condition, or lack thereof.  The Plaintiffs do not, however, assert that Attorney Klar is in any way qualified to rebut or comment on expert testimony regarding a mental illness diagnosis, treatment for such illness, or the current psychotic or non-psychotic state of an acquittee with whom he had no contact and no ability to treat.  Nor do the Plaintiffs explain how they themselves would have been qualified to comment on such evidence had they been present at the hearing to offer their own statements.  Moreover, the plaintiff victims of Messenger's crime are not parties to any PSRB hearing involving Messenger and are not entitled to present or cross examine witnesses.  Nonetheless, the transcript clearly demonstrates that Attorney Klar was attempting to call into question Dr. Trueblood's assessment that Messenger was free of psychotic symptoms, something Attorney Klar was not qualified to do.  It was thus reasonable for the PSRB to prevent Attorney Klar – a lay person – from commenting on expert testimony presented by a medical professional as to Messenger's diagnosis.

Further, the PSRB must consider all evidence available to it that is "material, relevant and reliable regarding the issues before the board" including, but not limited to, the trial record, "the information supplied by the state's attorney or any other interested party, including the acquittee, and information concerning the acquittee's mental condition and the entire psychiatric and criminal history of the acquittee."  Conn. Gen. Stat. § 17a-596(b).  Attorney Klar's lay opinion as to the accuracy of Dr. Trueblood's diagnosis of Messenger's then-current mental state is not relevant to the issue before the Board of whether Messenger continued to suffer from a mental illness, as Attorney Klar is not qualified to opine on such a diagnosis.  It is also unreliable as Attorney Klar does not purport to have any expertise in the treatment or diagnosis of mental illness. The Board must, "as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence."  Conn. Gen. Stat. § 4-178; Regs. Conn. State Agencies § 17a-581-24.  Klar's commentary on Trueblood's evidence at the May 1, 2009 hearing was also likely unduly repetitious, as Trueblood had already testified.

Lastly, the PSRB's rules give victims a chance to present a statement to the Board in writing before a hearing, or in person at a hearing.  It stands to reason, then, that the PSRB would reasonably have believed that the statement to be presented at the May 1, 2009 hearing would have been similar to any statement presented in writing prior to such hearing, which necessarily would not have taken into account expert evidence presented at the hearing.  As articulated infra, victims of convicted offenders have an identical right to make a statement *either*

**42**

before a hearing of the Board of Pardons and Parole, in writing, *or* during a hearing, in person.  *See* section IV.b.

As such, the PSRB did not violate due process by prohibiting Klar from commenting on this evidence.  Amendment of this claim is futile as additional factual allegations could not remedy the claim's deficiencies.

### 2.   Denial of Counsel, November 18, 2011

The Plaintiffs next allege that the PSRB denied them counsel at a hearing held on November 18, 2011.  The complaint alleges that, on that date, "Plaintiffs' counsel was required by PSRB Executive Director Ellen LaChance, only moments before the hearing commenced, to demonstrate that he had the authority to represent Plaintiff Dane Messenger and other Plaintiffs herein, in an intrusion into the attorney-client relationship between the Plaintiff(s) and Attorney John Klar," thus violating the Plaintiffs' right to due process.  [Dkt. 21, Am. Compl. ¶14].  This allegation cannot withstand a motion pursuant to Rule 12(b)(6).

Rule 1.5 of Connecticut's Rules of Professional Conduct requires that "[t]he scope of [an attorney's] representation, the basis or rate of the fee and expenses for which the client will be responsible, shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation."  Conn. Rules Prof'l Conduct R. 1.5(b).  Such a writing constitutes a contract by which the attorney and the represented party are bound.  *See Ullman, Perlmutter & Sklaver v. Byers*, 96 Conn. App. 501, 505 (2006).  It is reasonable to believe, because Director LaChance asked Klar to demonstrate his

authorization to represent one of the Plaintiffs prior to speaking on their behalf at the hearing, that the PSRB was aware of this professional practice rule.  Thus, on its face, the PSRB's request that Klar demonstrate his compliance with Connecticut's ethical rules and his authorization to represent a victim for whom he intended to speak at a hearing before the PSRB does not violate due process. *See, e.g., Burton v. Mottolese*, 267 Conn. 1, 38 (2003) (upholding trial court's sanction against attorney who was not authorized to bring action seeking declaratory and injunctive relief as to certain plaintiffs because she had violated rule 1.5(b) requiring a written engagement letter); *Sullivan v. Town of Monroe*, CV000370545, 2001 WL 951363 (Conn. Super. Ct. July 17, 2001) (noting that "[b]ecause there had never been an attorney-client relationship between the plaintiffs and Attorney Burton the court [in which Burton was representing plaintiffs at trial] inquired concerning her compliance with § 1.5(b) of the Rules").

Further, amendment of this claim would be futile as demonstrated by the Plaintiffs' arguments in their motions for preliminary injunction and declaratory judgment, as well as in their opposition to the Defendant's motion to dismiss.  In these motions, the Plaintiffs specifically cite to the affidavit of Hannah Williamson, who affirms that she was present at the PSRB hearing on November 18, 2011, along with Attorney Klar.  [Dkt. 5-8, Exh. I., H.W. Aff. ¶ 3].  She affirms that LaChance approached her and Klar and asked Klar if he intended to address the PSRB, to which Klar responded "I represent the whole family."  [*Id*. at ¶ 4]. After LaChance told Klar that he could only speak on behalf of a victim who had not provided the PSRB with a written statement, Klar stated "I represent the child

[Dane Williamson].”  [*Id.*].  LaChance responded that the child was no longer a child, and asked Klar if he had spoken to Dane Williamson recently.  Klar responded “[n]ot recently” and excused himself to confer with his clients.  [*Id.*].

Williamson’s explanation of the November 18, 2011 incident only bolsters this Court’s conclusion that amendment of this claim would be futile.  Dane Williamson, by the Plaintiffs’ own admission, was five years old at the time of his mother’s death on January 2, 1998.  At the May 1, 2009 hearing, the first hearing about which the Plaintiffs complain, Dane Williamson thus would have been sixteen or seventeen years old, a legal minor.  At the November 18, 2011 hearing, Dane had attained the age of majority and was a legal adult.  Williamson’s affidavit demonstrates that Ellen LaChance, the PSRB’s Director, appeared to be concerned that Dane Williamson had grown from a legal minor whose parents or legal guardians could choose both his legal representative and the information about him to be submitted at a public hearing, to an adult on whose behalf his parents or legal guardians could no longer contract, and who as an adult could well have chosen not to present personal information to the PSRB in a public hearing.[5]  Klar admitted to LaChance that he had not spoken to Dane recently, and thus has tacitly admitted that he had not obtained Dane Williamson’s explicit consent to continue representation of him after Dane had become an adult

---

[5] The Court notes that, based on the filings in this case, the Plaintiffs had in the past presented to the PSRB information as to Dane Williamson’s mental and emotional state.  [*See, e.g.*, dkt. 5-2, 3/30/06 letter from Melody Williamson discussing her minor child’s mental health].  It is not inconceivable that a grown man would choose not to elaborate on such information at a public hearing, even where his guardians might have chosen to present the same such information when that adult was a child.

responsible for making his own contracts and consenting to his own representation.[6]

Even if this incident constituted a deprivation of Dane Williamson's due process rights, which the Court holds it did not, the Plaintiffs admit that they had notice of the issue of Dane's representation and an opportunity to remedy the problem, but that they chose not to do so.  Hannah Williamson affirms that after the exchange with LaChance, just before 9:00 AM, she and Klar called Dan Williamson (her brother and the man who raised Dane Williamson), and discussed "getting Dane Williamson out of bed, but [] were concerned that the nature of the discussion and shortness of notice might cause him undue stress." [Dkt. 5-8, Exh. I., H.W. Aff. ¶ 5].  They thus decided not to wake Dane Williamson, who was then a legal adult, to discuss Klar's representation of him before the PSRB.  [*Id.*].

Based on these allegations, the Court must conclude that it was not a violation of due process or the Plaintiffs' right to counsel for the PSRB to inquire about the continuation of Dane Williamson's representation, and this Court cannot conceive of an amendment to this claim that would cure the deficiencies

---

[6] This admission also tends to negate the idea that Dane Williamson the legal adult had ratified by his continuing conduct the contract for representation entered into by his legal guardians on his behalf at the time he was a minor.  *See, e.g., U.S. v. Wong*, 40 F.3d 1347, 1366 (2d Cir. 1994) ("… a minor legally incapable of entering a contract may nonetheless be found to have 'ratified' a contract by taking actions after attaining majority consistent with an intent to be bound by it").

therein.  Amendment would thus be futile as the Plaintiffs cannot address these deficiencies or allege facts sufficient to support this claim.

### 3.   Presentation of Dual Victim Statements and Denial of Counsel, November 18, 2011 and May 3, 2013

Lastly, the Plaintiffs assert that their due process rights were violated at the November 18, 2011 hearing and at a May 3, 2013 hearing when the plaintiffs were not allowed to present both written and oral statements.  Specifically, at the November 18, 2011 hearing, the Plaintiffs allege that "the PSRB [ ] indicated that counsel could not represent or speak at the hearing on behalf of a victim who had already submitted a written statement."  [Dkt. 21, Am. Compl. ¶14; dkt. 22, Decl. Jgmnt. Motion ECF p.16; dkt. 4-4, Ps' Motion for PI, ECF p.4, ¶ 8].  At the May 3, 2013 PSRB hearing, "the Plaintiff Dane Williamson was permitted by the PSRB solely to speak in person, or by written statement, and was denied the ability to address the Defendant PSRB through legal counsel of his choosing."  [Dkt. 21, Am. Compl. ¶15; dkt. 22, Decl. Jgmnt. Motion ECF p.8 ¶ 16].  Nothing in the record suggests that these written statements requested that Attorney Klar supplement their writers' statements in person at the hearings.

The PSRB's rules and regulations, as articulated earlier in this decision, clearly state that a victim or his legal counsel may attend a hearing and make a statement in person or, if he will not attend the hearing, may submit a written statement to the PSRB as part of the record to be considered.  Nowhere do the regulations allow a victim or his advocate to make both a written and an oral

statement or presentation to the PSRB.  To allow both would appear to serve no

purpose other than to undermine the principles of efficiency and finality.  Further,

this Court has concluded that this regulation does not violate due process.  The

PSRB's enforcement of this rule, then, does not constitute a violation of due

process.  Although the Plaintiffs have couched this claim partially as one for

denial of counsel, the PSRB's enforcement of this regulation does not constitute

a denial of a victim's right to counsel where a victim has submitted a written

statement before and does not appear at the hearing.  In that instance counsel's

statement is cumulative and might reasonably appear not to have been

authorized by the absent victim.  Where a victim chooses to submit a written

statement prior to a hearing, neither he nor his counsel has the right to also make

an oral statement before the Board.  It also appears that the PSRB consistently

applied its rules at both the November 18, 2011 and May 3, 2013 hearings.  On its

face, the November 18, 2011 incident of which the Plaintiffs complain does not

constitute a violation of due process.

        The evidence to which Plaintiffs cite in support of their claim as to the

November 18, 2011 hearing does not change this Court's analysis and only

confirms that the Plaintiffs received adequate process at this hearing (if indeed

any was due).  As to this hearing, the Plaintiffs reference the affidavit of Hannah

Williamson, which appears as Exhibit I to their motions for preliminary injunction

and declaratory judgment.  [Dkt. 22, Decl. Jgmnt. Motion ECF p.16; dkt. 4-4, Ps'

Motion for PI, ECF p.4, ¶ 8].  Williamson affirms in that document that PSRB chair

LaChance told her and Klar that Klar could only represent at the hearing a victim

who had not provided a written or other statement to the Board, and that Heather Messenger Williamson's brothers had already provided the Board with written statements.  [Dkt. 5-8, Exh. I, H.W. Aff. ¶ 4].  Thus, the evidence in support of Plaintiffs' November 18, 2011 claim demonstrates that the PSRB complied with its rules and regulations allowing a victim or his advocate to either present an oral statement at the hearing or, it not present, to present a written statement to the Board for consideration.  This does not constitute a denial of due process.

As to the May 3, 2013 hearing, the Plaintiffs rely on and cite to a portion of the hearing transcript[7] to support their argument that process was denied them. [Dkt. 22-1, Exh. M, 5/3/13 Trans.; dkt. 22, Decl. Jgmnt. Motion ECF p.8 ¶ 16].  The transcript records the following exchange:

> Mr. Klar: … I'm here to represent the three other -- … But I've been told I will not be allowed to speak on their behalf, is that correct, for the record, but that my client may make a written statement?
>
> Chairman Hennessey: Yes, that would be fine, Mr. Klar.
>
> Klar: And so my clients can appear to make a statement in person or submit a written statement, but I cannot speak on their behalf?  Because they're my clients too.  But – so – they have a right to legal counsel.
>
> Hennessey: Mr. Williamson[8] – … is Mr. Klar your attorney?
>
> Mr. Williamson: Yes – yes, he is.

---

[7] The complaint impliedy incorporates this transcript and also relies on it.  The Court may also take judicial notice of this transcript for purposes of a Rule 12(b)(6) analysis.
[8] The transcript does not indicate whether "Mr. Williamson" refers to Daniel, Gordon, or another male.

Klar:  So – but – so I'm not?  Because he's given a statement, I've been told in the past I'm not allowed to speak on his behalf?

Hennessey: Well you may speak on … your clients' behalf. He's already given us obviously his thoughts and ideas in a – in a very detailed statement, so perhaps you could be very brief, Mr. Klar.

Klar: Well – and again may I speak on behalf of Dane as well?

Hennessey: I would like to – I would suggest that you – we will hold decision until we get a written statement from –

Klar: Okay. Well I just – for the record I except to that because if I can only hand in his statement, I'm just a delivery boy.  And I have heard a social worker comment on what Mr. Messenger said this morning, and as a lawyer, I would think I could say what my client said last night.

Hennessey: I understand that, Mr. Klar –

Klar: And so – just for the record, I just wanted to make that clear.

Hennessey: But your client is an adult and not present, so we just have –

Klar: That's right, but –

Hennessey: -- but – but that would be helpful –

Klar: My interpretation of the law is that he would be allowed to have counsel here to speak for him –

Hennessey: Mmm-hmm –

Klar: -- whatever his age.  [Klar proceeds to make a three paragraph statement regarding the impact on Dane Williamson and the Plaintiffs' belief that the PSRB does not have the power to properly anticipate the future non-physical impact on Dane Williamson].

[Dkt. 22-1, Exh. M, 5/3/13 Trans. 54:5 – 58:2].

This exchange reveals first that Mr. Klar and a Mr. Williamson were present at the May 3, 2013 PSRB hearing.  Dane Williamson was not present.  Although

Mr. Williamson had already submitted a "very detailed statement" in writing, the PSRB nonetheless permitted Attorney Klar to speak at the hearing on Mr. Williamson's behalf, which they were not obligated to do pursuant to the regulations allowing the presentation of either a written or oral statement.

Second, this exchange demonstrates that Dane Williamson had prepared a written statement but that Attorney Klar also wanted to speak on Dane Williamson's behalf at the hearing; Klar then took issue with the PSRB's preference for Dane's written statement rather than his counsel's statement on his behalf, as this would make Klar "just a delivery boy."  Third, and finally, despite the fact that the PSRB preferred to consider Dane's actual written statement, Klar was then allowed to make an oral statement regarding the impact on Dane Williamson and the Plaintiffs' belief that the PSRB does not have the power to properly anticipate the future non-physical impact on Dane Williamson. The PSRB thus did not violate due process when it attempted to comply with its rule allowing either a written or oral statement, and nonetheless then allowed Klar to proceed with his oral statement on Dane Williamson's behalf despite the existence of Dane Williamson's written statement.  It was not unreasonable for the PSRB to have concluded that Dane's written statement constituted his statement on the matter before the Board, or to have precluded Klar from speaking on Dane's behalf given that Dane had prepared a written statement. This transaction does not constitute a violation of due process.

In sum, even if the Plaintiffs were to amend their complaint to state the correct defendant, they have not stated a claim upon which relief may be granted

pursuant to Rule 12(b)(6) for violation of due process in the November 18, 2011 or May 3, 2013 hearings, nor would amendment of either of these two claims be productive.  The Plaintiffs' rights to speak were honored at both hearings, evidenced by the fact that the Plaintiffs knew they had the opportunity to be heard and expressed such through their written statements to the Board. Nothing in the record suggests that the Plaintiffs who submitted written statements also reserved any right to have their attorney supplement their statements at the hearings.  Moreover, the record does not indicate, where a victim did not submit a written statement, that his or her legal representative was barred from speaking on his or her behalf at a subsequent PSRB hearing.  The Plaintiffs were thus not denied the right to make a statement at any complained-of hearing.  Consequently amendment is futile.

### 4.   Right to Notice of Alleged Deprivations

Lastly, the Plaintiffs claim that their due process rights were violated because the PSRB did not notify them before depriving them of their right to counsel and to be heard.  As none of the subject incidents constituted a deprivation of the Plaintiffs' constitutional rights, this claim is moot.  Moreover, the rules and regulations allowing a victim to present either a written or oral statement, but not both, are clear and thus constituted adequate notice of the content of this particular rule.

### b.   Equal Protection

The Plaintiffs allege violations of their rights to Equal Protection in two ways.  First, they claim that the PSRB's curtailment of their rights to allocution and counsel constitute violations of Equal Protection "because these restrictions are not imposed on victims who participate in the criminal justice system.  Victims of crimes in which the perpetrator is adjudicated to be not guilty by reason of mental illness or disease, are afforded disparate and inferior constitutional protections under existing Connecticut law, which disparity is not justified by a rational state interest."  [Dkt. 21, Am. Compl. ¶25].  Second, they allege that the PSRB's restrictions on consideration of the Plaintiffs' non-physical injury infringe their rights to Equal Protection, as "these restrictions are not imposed on victims who participate in the criminal justice system."  [*Id.* at ¶33].  The Defendant counters that no Equal Protection violation exists because the victims of acquittees are not similarly situated to victims of convicted offenders.

The Plaintiffs' Equal Protection claims could not survive a motion to dismiss pursuant to 12(b)(6) and cannot be amended such that the claim could be viable.  First, although the Plaintiffs claim that they have been deprived of or not afforded procedural rights allowed to victims of crimes perpetrated by convicted criminals (as opposed to those found not guilty by reason of mental illness or defect), the Plaintiffs have not sufficiently asserted in their motions or opposition *what* rights the group to which they seek to compare themselves are afforded, the source of these rights, or how those rights differ from those afforded to victims such as Plaintiffs.  Although this defect is not fatal, the Plaintiffs' equal protection claims must fail as the protections afforded to each group under Connecticut law

are equivalent and, even if they are not, the Plaintiffs and the victims of crimes perpetrated by convicted criminals are not similarly situated.

The Fourteenth Amendment declares that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. Amend. XIV.  "The Equal Protection Clause requires that the government treat all similarly situated people alike."  *Harlen Associates v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike.")).

The general rule applicable to statutes that draw classifications between protected groups is "that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne, Tex.*, 473 U.S. at 440.  Certain classifications based on membership in a vulnerable class such as race, alienage, national origin, or gender, however, are subject to more stringent analysis: strict scrutiny or intermediate review.  *See id.*; *U.S. v. Virginia*, 518 U.S. 515 (1996).  Moreover, where a plaintiff does not allege classification based on membership in a protected class (ie, classification based on race, alienage, national origin, or gender), he may bring a so-called "class of one" equal protection claim alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Harlen Associates*, 273 F.3d at 499.

### i.  Protections Afforded to Victims Are Equivalent

The Plaintiffs contend that their rights as victims of acquittees differ unconstitutionally from the rights afforded to victims of convicted criminals. However, the protections afforded each group are, in this Court's review, the same and thus no equal protection violation exists.

First, the Plaintiffs contend that their right to equal protection has been infringed because they are "not recognized as victims of crimes at all" due to the "peculiar legal status which attaches to those found not guilty by reason of insanity or other comparable legal determination."  [Dkt. 4-4, Ps' Motion for PI, ECF p.8].  The Plaintiffs claim, without citing to any authority, that "[c]urrently, only a very few states legislatively address the category of victim of which all Plaintiffs in this matter are members: people traumatized by the actions of those who have been excused from criminal culpability by law because of psychological illness."  [*Id.*].  However, the Plaintiffs have failed to note that pursuant to the very Connecticut statutes and regulations they are challenging in this action, victims of acquittees *are* explicitly categorized as victims, a categorization which provides them with procedural rights.  Consequently, the argument that the Plaintiffs are not recognized as victims at all is erroneous.

Second, and most importantly, the Plaintiffs contend that, while their rights to allocution and counsel and to have the risk of emotional harm borne of an acquittee's release considered have been infringed (which this Court does not credit), the rights of victims of convicted criminals are not similarly proscribed.

The Plaintiffs cite to almost no legal authority to support the claim that the statutory protections afforded to them are in some way different or inferior to those provided to crime victims.  Indeed, this Court's review demonstrates that the rights afforded to both groups of victims are the same and therefore no disparity exists such that the Plaintiffs could cure their equal protection claims.

The only reference to Connecticut law regarding victims' rights to which the Plaintiffs cite in support of their claim that their rights to allocution and counsel have been abridged is Article 1, section 8.b. of the Connecticut Constitution, which provides certain rights to victims of crime and which the Plaintiffs contend ignores victims of acquittees.  This section states in full:

> b. In all criminal prosecutions, a victim, as the General Assembly may define by law, shall have the following rights: (1) the right to be treated with fairness and respect throughout the criminal justice process; (2) the right to timely disposition of the case following arrest of the accused, provided no right of the accused is abridged; (3) the right to be reasonably protected from the accused throughout the criminal justice process; (4) the right to notification of court proceedings; (5) the right to attend the trial and all other court proceedings the accused has the right to attend, unless such person is to testify and the court determines that such person's testimony would be materially affected if such person hears other testimony; (6) the right to communicate with the prosecution; (7) the right to object to or support any plea agreement entered into by the accused and the prosecution and to make a statement to the court prior to the acceptance by the court of the plea of guilty or nolo contendere by the accused; (8) the right to make a statement to the court at sentencing; (9) the right to restitution which shall be enforceable in the same manner as any other cause of action or as otherwise provided by law; and (10) the right to information about the arrest, conviction, sentence, imprisonment and release of the accused. The General Assembly shall provide by law for the enforcement of this subsection. Nothing in this subsection or in any law enacted pursuant to this subsection shall be

> construed as creating a basis for vacating a conviction or
> ground for appellate relief in any criminal case.

Conn. Const. art. I, § 8.b.

The Court notes that section 8.b. confers rights on victims of crime during the process of criminal prosecution, and that the Plaintiffs have not claimed that their rights were abridged during the criminal prosecution of David Messenger and prior to his remand to the PSRB's jurisdiction.  Moreover, the right to information about the imprisonment and release of the accused pursuant to Article First, a right which endures after an accused's conviction – also exists as to victims of acquittees.  As discussed previously, if the acquitting court determines that an acquittee's victim has requested notice, "it shall notify the victim of any hearing held by the court" and, after the PSRB commences jurisdiction over the acquittee, the PSRB is obligated to "make a reasonable effort to notify the victim of any board hearings or orders or of any escape of the acquittee."  Conn. Gen. Stat. § 17a-601(b).  This notice must be written and given "within a reasonable time."  Regs. Conn. State Agencies § 17a-581-15.  A victim "may appear at any court or board hearing concerning the acquittee to make a statement."  Conn. Gen. Stat. § 17a-601(b).  Within twenty-five days of the conclusion of any PSRB hearing, the PSRB must provide written notice of its decision to the acquittee, the acquittee's counsel, the state's attorney, and any victim.  Conn. Gen. Stat. § 17a-596(h).  Further, the Plaintiffs have not alleged that the PSRB has failed to notify them of any Board hearings or any escape by Mr. Messenger or that the court failed to notify them previously.  In sum, nothing in Article 1, section 8.b. indicates that victims of accused men and women who are

later acquitted pursuant to an insanity defense are deprived pursuant to the Connecticut Constitution of any right bestowed on victims of convicted criminals by that document.[9]

The Plaintiffs also argue that "[t]he removal of criminal culpability from those with mental illness leaves victims of their actions with essentially civil recourse only, augmented where applicable by the administrative proceedings such as those of the PSRB," which proceedings "are almost uniformly more restrictive on remedies and rights of victims …"  [Dkt. 22, Decl. Jgmnt. Motion ECF pp.11-12].  Aside from failing to explain how the rights afforded to them before the PSRB are more restrictive than the rights afforded to victims of convicted offenders, this Court's review indicates that the rights to allocution and counsel afforded to both groups are equal, and thus amendment of the Plaintiffs' equal protection claims would be futile.

As previously discussed in depth, the PSRB's rules and regulations state that an acquittee's victim has the right to be notified of and to attend any hearing before the board and the right to make a statement in person or, if he will not attend the hearing, to submit a written statement to the PSRB as part of the record to be considered at the hearing.  Such a statement may express a victim's

---

[9] Indeed, "[b]y its explicit terms, the victim's rights amendment contemplates additional implementing legislation to give effect to its provisions." *State v. Gault*, 304 Conn. 330, 340 (2012).  The statutes and regulations providing procedural rights to victims of acquittees are just such implementing legislation.  Moreover, "there are no statutes providing for a private right of action under Article first, § 8(b), nor is there any appellate authority providing for such a cause of action." *Kolton v. Stamford Police Dep't*, FSTCV116008948S, 2013 WL 7084786 (Conn. Super. Ct. Dec. 27, 2013).

opinion on the matter before the Board.  The regulations specifically allow victims to be represented by counsel, as the definition of "victim" encompasses "a person who is a victim of a crime, the legal representative of such person or a member of a deceased victim's immediate family."  Conn. Gen. Stat. § 17a-601(a).

The rights of the victims of convicted offenders are nearly identical.  At the post-conviction and post-sentencing stage, such a victim, defined as "a person who is a victim of a crime, the legal representative of such person, a member of a deceased victim's immediate family or a person designated by a deceased victim," has the same right to allocution before the Board of Pardons and Paroles as do victims before the PSRB:

> At a hearing held by a panel of the Board of Pardons and Paroles for the purpose of determining the eligibility for parole of an inmate incarcerated for the commission of any crime, such panel shall permit any victim of the crime for which the inmate is incarcerated to appear before the panel for the purpose of making a statement for the record concerning whether the inmate should be released on parole or the nature of any terms or conditions to be imposed upon any such release. In lieu of such appearance, the victim may submit a written statement to the panel and the panel shall make such statement a part of the record at the parole hearing.

Conn. Gen. Stat. § 54-126a(a), (b).  Although this language differs slightly from that employed in the statutes and regulations governing the PSRB, the import is identical: both sets of victims have the right to make a statement before their respective board regarding the matter before the board or, if they do not intend to be present at a hearing, to submit a written statement for inclusion as part of the record.  Neither class of victim enjoys the right to make both an oral and written

statement.  Both classes of victim also enjoy a right to counsel, as a victim includes the legal representative of a victim in both instances.

Although the rights of victims at criminal sentencings are not necessarily germane to this case as the instances in which the Plaintiffs believe their rights to have been violated each occurred before the PSRB, an administrative board, rather than a court, it is notable that victims of offenders who have been found or have pled guilty or nolo contendere, and victims of youthful offenders, possess effectively similar rights to allocution and counsel as do victims of acquittees at hearings before the PSRB.  Prior to imposition of a sentence or acceptance of a plea by a non-youthful offender, "the court shall permit any victim of the crime to appear before the court for the purpose of making a statement for the record, which statement may include the victim's opinion of any plea agreement."  Conn. Gen. Stat. § 54-91c(b).  Further,

> [i]n lieu of such appearance, the victim may submit a written statement or, if the victim of the crime is deceased, the legal representative or a member of the immediate family of such deceased victim may submit a statement of such deceased victim to the state's attorney, assistant state's attorney or deputy assistant state's attorney in charge of the case,

who then must file the statement with the sentencing court to be made part of the record at sentencing.  *Id.*  Victims of youthful offenders likewise have the right "to submit a written statement for the record, or to appear before the court and make a statement for the record" regarding a youthful offender's plea agreement or sentence.  Conn. Gen. Stat. § 54-76q.  Thus, a victim of a convicted offender or of a youthful offender may appear at a court hearing to make a statement, *or* may

submit a written statement in lieu of such appearance, the same right possessed by victims of acquittees.  Moreover, the definition of a "victim" of a non-youthful convicted offender is "a person who is a victim of a crime, the legal representative of such person, a member of a deceased victim's immediate family or a person designated by a deceased victim in accordance with section 1-56r," which is nearly identical to the definition applied to a victim of an acquittee, demonstrating that both victims are entitled to the same right to counsel.  Conn. Gen. Stat. § 54-91c(a).

The Plaintiffs spend much time discussing the differing legal treatment and status of acquittees and convicted offenders, and argue that this "shift in legal status is what diminishes or completely erases the legal status of the very real victims of very real crimes that were often very violently perpetrated," and that victims of acquittees experience more anxiety as a result of the differing legal status of acquittees.  [Dkt. 4-4, Ps' Motion for PI, ECF p.10; see also dkt. 4-4 p.9]. As victims of acquittees and victims of convicted criminals are entitled to the same effective statutory rights to allocution and counsel, though, this line of argument is moot.  Moreover, the fundamentally different legal status of acquittees and convicted offenders is the very reason that the victims of the two groups are not similarly situated such that a comparison of the two groups could lead to a cognizable equal protection claim, as discussed *infra*.  *See* section IV.b.i, *infra*.

As a final note, the Plaintiffs' observations about the federal Crime Victims' Rights Act, which they claim "only extends its protections and remedies to

victims of federal crimes resulting in criminal conviction," is irrelevant to the Plaintiffs' argument.  [Dkt. 4-4, Ps' Motion for PI, ECF p.11].  This Act applies to victims of federal crimes; Mr. Messenger did not commit a federal crime and was thus prosecuted in state court and under Connecticut law.  The Act and its protections are inapplicable to the Plaintiffs in this case.

In sum, victims of acquittees and victims of convicted criminals are entitled to effectively identical statutory rights to allocution and counsel before the respective boards with jurisdiction over offenders and acquittees.  Consequently, amendment of the Plaintiffs' equal protection claims as to these rights would be futile as these claims could not survive a motion pursuant to Rule 12(b)(6).

### i.  The Victim Groups are not Similarly Situated

However, even if the protections afforded to these two groups of victims differ, victims of acquittees are not similarly situated to victims of crime perpetrated by convicted criminals such that an equal protection violation would be viable.

As previously discussed, a verdict of not guilty by reason of insanity "establishes two facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness." *Foucha v. Louisiana*, 504 U.S. 71, 76 (1992).  "The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness."  *Jones v. United States*, 463 U.S. 354, 368 (1983); *see also State*

*v. March*, 265 Conn. 697, 715-16 (2003); *Clark v. Arizona*, 548 U.S. 735, 779 n. 45 (2006) (same); *Payne v. Fairfield Hills Hosp.*, 215 Conn. 675, 683 (1990).  Thus, "the confinement of insanity acquittees, although resulting initially from an adjudication in the criminal justice system, is not punishment for a crime." *Payne*, 215 Conn. at 683; *see also State v. Harris*, 277 Conn. 378, 394 (2006) ("the primary purpose of continued commitment proceedings is to protect society and to treat the acquittee's mental illness, not to punish the acquittee").  Those acquitted by reason of insanity or mental illness effectively opt out of the criminal justice system in favor of a system designed to treat their mental illness such that they may eventually rejoin society as healthy individuals.  Acquittees are thus not legally guilty of the crime for which they were charged.

In contrast, the purpose of imprisonment of convicted criminals – who have been found guilty of the crime for which they were charged – is punitive: "[a] State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution."  *Foucha*, 504 U.S. at 80. *See also Jones*, 463 U.S. at 369 (noting that a state may punish a person convicted of a crime even if satisfied that he is unlikely to reoffend, but that "[d]ifferent considerations underlie commitment of an insanity acquittee.  As he was not convicted, he may not be punished.  His confinement rests on his continuing illness and dangerousness"); *State v. Fowlkes*, 283 Conn. 735, 744 (2007) (The "traditional aims of punishment, namely, [are] retribution and deterrence").  Consequently, punitive interests are not dispositive to the question of whether an acquittee should be granted temporary, conditional, or final release

by the PSRB, which must grant such release to an acquittee when he has regained his sanity or is no longer dangerous.  *See Jones*, 463 U.S. at 368 ("[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous."); *Richard S. v. Carpinello*, 589 F.3d 75, 81 (2d Cir. 2009) ("The United States Supreme Court has long held that the Due Process Clause allows an insanity acquittee to be confined as long as he is both mentally ill and dangerous, but no longer.").  So long as "an acquittee has a mental illness that requires confinement for purposes of treatment and protection [even if this illness is different from that forming the basis of his confinement], his confinement to a psychiatric facility is reasonably related to the purpose of commitment and is, therefore, constitutional."  *State v. March*, 265 Conn. 697, 715-16 (2003) (citations omitted).

The composition of the entities regulating acquittees and convicted offenders differs according to the disparate goals of each system.  As noted, the PSRB consists of six members: a psychiatrist, a psychologist, a person with substantial experience in the process of probation, an attorney barred in Connecticut, a member of the public with substantial experience in victim advocacy, and a member of the general public.  Conn. Gen. Stat. § 17a-581(a), (b). The board of Pardons and Paroles, in contrast, consists of eighteen members appointed by the governor and approved by both houses of the General Assembly, twelve of whom serve exclusively on parole release panels.  Conn. Gen. Stat. § 54-124a(a).  Each member "shall be qualified by education, experience or training in the administration of community corrections, parole or

**64**

pardons, criminal justice, criminology, the evaluation or supervision of offenders or the provision of mental health services to offenders." *Id*.  While the PSRB must include two mental health professionals, the Board of Pardons and Paroles need not contain any.

As a result of the fundamental differences in the purposes of commitment and imprisonment and society's differing interests in acquittees and convicted criminals, victims of these two groups cannot be considered similarly situated for purposes of the Plaintiffs' desired rights in PSRB hearings.  The purposes of PSRB hearings differs from both sentencing hearings conducted by the court and parole hearings conducted by the Board of Pardons and Paroles and are not comparable for purposes of an equal protection analysis.  Where the state of Connecticut cannot have a punitive or retributive interest in the outcome of a PSRB hearing as to an acquittee's mental health, nor can a victim.  As such, where the state may have an interest in learning the non-physical impact a crime has had on the victim of a convicted criminal for purposes of determining how heavily the state's punitive interest weighs in crafting an appropriate sentence or in recommending parole from prison, the state does not have the right or the ability to consider such evidence when determining whether an acquittee is mentally stable enough for release to the community.  Nor can the state have an interest in a victim's or his counsel's non-material and non-relevant comment(s) on evidence presented at a PSRB hearing, where such evidence could not speak to the acquittee's mental health but rather only to punitive or retributive considerations.  *See, e.g., Connelly v. Comm'r of Correction*, 258 Conn. 374, 387

(2001) ("equating a term of imprisonment with a period of commitment is like comparing apples with oranges.  A commitment following an insanity acquittal is not a sanction, and its purpose, therefore, is entirely different from that of a criminal sentence.").

Consequently, the Plaintiffs' equal protection claims are not cognizable and amendment of the complaint would be futile.

### ii.   Level of Scrutiny Applicable: Rational Basis Review

Lastly, as the Plaintiffs here have failed to successfully allege that a fundamental right has been infringed, have not articulated a reason for this Court to apply strict or intermediate scrutiny, and do not assert membership in a protected class, rational basis review must apply to their equal protection claims. However, as the Plaintiffs' equal protection claims fail because they have not articulated how their rights differ from those afforded to victims of convicted offenders, it is unnecessary for the Court to perform this analysis.[10]

Consequently, amendment of Plaintiffs' two equal protection claims is futile. Amendment is DENIED.

---

[10] The Plaintiffs here have argued that "[t]here is no rational basis for the State of Connecticut to treat the[ ] classes of victims differently: on the contrary, if there were a rationale for disparate treatment, it would be that victims of acts by the mentally ill merit more sensitive and thorough treatment than those where there has been criminal adjudication and thus clear entitlement to restitution, retribution, and allocution for victims identified therein."  [Dkt. 22, Decl. Jgmnt. Motion ECF p.13].  This Court cannot find that Connecticut treats victims of acquittees differently than victims of convicted offenders, and it would be patently inappropriate and a violation of separation of powers for this Court to create and to grant, in the absence of any due process violation, more rights to victims of acquittees than are possessed by victims of convicted offenders.

**V.     Conclusion**

For the foregoing reasons, the Court denies the Plaintiffs leave to amend their complaint to name the correct defendant, as amendment would not cure the underlying deficiencies in their claims.  The Court further concludes that amendment of the Plaintiffs' claims for violations of due process and equal protection would be futile, as the Plaintiffs could not add factual content sufficient to make these claims viable such that they could survive a motion under Rule 12(b)(6) or such that they could prevail on their motions for declaratory judgment or preliminary injunction.  The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**_____/s/_____**
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: August 13, 2014**

**67**